LIONEL Z. GLANCY (#134180)
MICHAEL GOLDBERG (#188669)
ROBERT V. PRONGAY (#270796)
**GLANCY BINKOW & GOLDBERG LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
E-mail: info@glancylaw.com
lglancy@glancylaw.com
mmgoldberg@glancylaw.com
rprongay@glancylaw.com

*Attorneys for Plaintiff Charles Paddock*
[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES PADDOCK, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>DREAMWORKS ANIMATION SKG, INC., JEFFREY KATZENBERG, and LEWIS W. COLEMAN<br>                              Defendants. | Case No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiff Charles Paddock ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding DreamWorks Animation SKG, Inc., ("DreamWorks" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.   Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action brought on behalf of a class consisting of all persons and entities, other than Defendants (defined below) and their affiliates, who purchased or otherwise acquired the securities of DreamWorks from October 29, 2013 to July 29, 2014, inclusive (the "Class Period").   Plaintiff seeks to pursue remedies against DreamWorks and certain of its officers and directors for violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

2.    Defendant DreamWorks Animation SKG, Inc. is a Delaware corporation engaged in the development, production, and exploitation of animated films and their associated characters worldwide. The Company was founded in 1985 and is

headquartered in Glendale, California.  Shares of DreamWorks trade on the NASDAQ Exchange under the ticker symbol "DWA".

3.     In the summer of 2013, the Company released "Turbo," an animated film about a snail given super-speed powers.  The film, which cost $135 million, grossed only $83 million at the domestic box office when it was released in July 2013, and just $282.6 million worldwide, a massive disappointment for the Company.  However, it was not until February 2013 before the Company announced a $13.5 million write-down for the Turbo movie.

4.     The Turbo write-down is one of three recent write-downs at the Company; the others were announced after the disappointing returns on the films "Rise of the Guardians" and "Mr. Peabody & Sherman."

5.     Throughout the Class Period, Defendants made false and/or misleading statements, and failed to disclose material adverse facts about the Company's business, operations, prospects and performance.   Specifically, during the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) DreamWorks failed to take a write-down for its Turbo movie in a timely fashion; (ii) as a result, the Company's net income for the fiscal year of 2013 was materially overstated; (iii) the Company lacked adequate internal and control over financial reporting; and (iii) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

6.     On July 29, 2014, during a conference call with analysts, DreamWorks Animation revealed that the Company is under investigation by the Securities and Exchange Commission for the $13.5 million write-down the studio took in February in

relation to the poor performance of Turbo. The Company indicated that it is cooperating with the SEC but would not elaborate on the scope of the extent of the investigation.

7.      On the news, shares in DreamWorks fell $2.68 or almost 12%, on extremely heavy trading volume, to close at $19.98 on July 30, 2014.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

11.     Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

12.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13.     Plaintiff, as set forth in the accompanying Certification, which is incorporated by reference herein, purchased the securities of DreamWorks at artificially

inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14.    Defendant DreamWorks is a Delaware company headquartered and operating in the Campanile Building at 1000 Flower Street, Glendale, CA 91201. At all relevant times herein shares of DreamWorks were listed on the NASDAQ under the ticker symbol DWA.

15.    Defendant Jeffrey Katzenberg ("Katzenberg") is, and at all relevant times was, the Company's Chief Executive Officer and a Director.

16.    Defendant Lewis W. Coleman ("Coleman") is, and at all relevant times was, the Company's Vice Chairman and Chief Financial Officer.  Effective June 13, 2014, Coleman assumed the role of Chief Accounting Officer ("COA") after the Company's previous COA abruptly announced her resignation on May 19, 2014.

17.    Defendants referenced above in ¶¶ 15 and 16 are sometimes referred to herein, collectively, as the "Individual Defendants."

18.    DreamWorks and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19.    DreamWorks Animation SKG, Inc. is engaged in the development, production, and exploitation of animated films and their associated characters worldwide. The Company operates through four segments: Feature Films, Television, Consumer Products, and Others. It creates and exploits family entertainment, including animated feature films, television series and specials, live entertainment properties, and related consumer products, as well as licenses distribution rights.  The Company offers

animated feature films and characters primarily in theatrical, home entertainment, digital, television, merchandising and licensing, and other markets.

20.    DreamWorks also licenses its characters, film elements, and other intellectual property rights to consumer product companies, retailers, live entertainment companies, music publishers, theme parks, cruise ships, and hotels. It has strategic alliances with McDonald's, Hewlett-Packard, and Intel.

21.    DreamWorks was founded in 1985 and is headquartered in Glendale, California.   DreamWorks is incorporated in Delaware and its shares trade on the NASDAQ exchange under the ticker symbol DWA.

22.    In the summer of 2013, the Company released "Turbo," an animated film about a snail given super-speed powers.   The $135 million film grossed only $83 million at the domestic box office when it was released in July 2013, and just $282.6 million worldwide, a disappointment for the Company that prompted the belated $13.5 million write-down announced in February 2013.

23.    The Turbo write-down is one of three recent write-downs at the Company; the others were announced after the disappointing returns on the films "Rise of the Guardians" and "Mr. Peabody & Sherman."   The Turbo write-down was the smallest of the three.

**Materially False and Misleading
Statements Issued During the Period**

24.    On October 29, 2013, the first day of the Class Period, the Company issued a press release and filed a Form 8-K, announcing its financial and operating results for the third quarter ended September 30, 2013.   Net income was $10.06 million, or $0.12 per diluted share, on revenues of $154.55 million, compared net income of $24.44

million or $0.29 per diluted share on revenues of $186.3 million for the same period in the prior year.

25.     In the press release, the Company stated, in part:

> *Turbo*, which was released theatrically on July 17, 2013, has reached $82.7 million at the domestic box office and $163.5 million at the international box office for a worldwide gross of $246.2 million to date. *Turbo* contributed feature film revenue of $6.4 million to the third quarter.

26.     On October 30, 2013, the Company filed a quarterly report on Form 10-Q with the SEC which was signed by defendant Coleman, and reiterated the Company's previously announced quarterly and year-end financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by defendants Katzenberg and Coleman, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27.     On February 25, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the fourth quarter and year ended December 31, 2013. For the fourth quarter, net income was $17.19 million, or $0.20 per diluted share, on revenues of $204.28 million, compared to a net loss of $82.71 million or $0.98 per diluted share on revenues of $264.66 million for the same period in the prior year.  For the year, net income was $55.08 million, or $0.65 per diluted share, on revenues of $706.92 million, compared to net income of $151.04 million, or $1.73 per diluted share, on revenues of $725.18 million for the prior year.

28.     In the press release, the Company stated, in part:

> The Company's fourth quarter 2013 results included an impairment charge of $13.5 million, or a loss of approximately $0.12 cents of

earnings per share on a fully diluted basis, related to the Turbo feature film, as a result of its performance during the last two months of the quarter.

\* \* \*

*Turbo,* which was released theatrically on July 17, 2013, reached $282.6 million at the worldwide box office. The film contributed feature film revenue of $1.6 million in the quarter. *Turbo* was released into the domestic home entertainment market on November 12, 2013. The film reached an estimated 3.3 million home entertainment units sold worldwide through the end of the fourth quarter, net of actual and estimated future returns.

29.     On February 26, 2014, the Company filed an annual report on Form 10-K with the SEC which was signed by defendants Katzenberg and Coleman, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-K contained SOX certifications signed by defendants Katzenberg and Coleman, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

30.     With regard to the performance of the Turbo movie, and the need to take an impairment charge related to the film, the Company stated the following in the 10-K:

During the year ended December 31, 2013, we released two feature films, Turbo (our July 2013 theatrical release) and The Croods (our March 2013 theatrical release). A discussion of the revenues generated from these films is provided in the section entitled "—Overview of Financial Results—Revenues—Feature Films—Current year theatrical releases."

Due to Turbo's performance in the international theatrical market during the last two months of the quarter ended December 31, 2013, we recorded an impairment charge totaling $13.5 million (of which $11.9 million and $1.6 million was allocated to the Feature Film and Consumer Products segments, respectively). Further discussion is provided in the section entitled "—Overview of Financial Results—Costs of Revenues."

\* \* \*

### *Overview of Financial Results –*
#### *Costs of Revenues –*
##### *Feature Films –*

- We recorded an impairment charge of $11.9 million (exclusive of the impairment allocated to the Consumer Products segment of $1.6 million) on *Turbo* during the year ended December 31, 2013. Due to *Turbo's* performance in the international theatrical market during the last two months of the quarter ended December 31, 2013, we re-assessed the film's Ultimate Revenue projections (including our estimates of the film's revenues in other markets, including international home entertainment and television, which have not yet been released), which resulted in the film's estimated fair value (calculated using a net present value model) being less than the film's unamortized capitalized production costs. See "—Critical Accounting Policies and Estimates—Film and Other Inventory Costs Amortization" for further discussion regarding the Company's process for assessing its film and other inventory costs and the *Turbo* impairment charge; see also Note 6 to the consolidated financial statements contained elsewhere in this Form 10-K;

*       *       *

### Critical Accounting Policies and Estimates –
#### *Film and Other Inventory Costs Amortization –*

We may also from time to time observe indicators of impairment subsequent to a film's initial worldwide theatrical release, such as lower-than-expected performance in home entertainment and other post-theatrical markets, which result in a reduction in our estimate of a film's Ultimate Revenues and may result in an impairment of the film in periods following its initial theatrical release. For example, *Turbo* (initially released in July 2013 in the domestic theatrical market) underperformed in the domestic theatrical market, but, due to our then-current estimates of remaining net cash flows for all remaining markets, we concluded that it was not impaired as of September 30, 2013 (the quarter of initial domestic release). However, as a result of the weak international theatrical performance of *Turbo* (which caused us to also revise downward our estimates of future revenues in other post-theatrical markets) during the last two months of the quarter ended December 31, 2013, we recorded an impairment charge of $13.5 million on the film during such quarter. As of December 31, 2013, our remaining capitalized film production costs with respect to *Turbo* were approximately $101.4 million.

The impairment charge recognized for *Turbo* takes into consideration, among other things, our estimate of future revenues. Due to the nature of our distribution arrangement with Fox, a significant portion of these future revenues are known to us, even

though they have not been recognized in our financial results as of December 31, 2013. Similarly, as a result of fixed arrangements and minimum guarantees that we have in place with respect to television distribution and consumer products licensing arrangements, there are other revenue streams that are essentially known to us even though they have not yet been recognized in our financial results. However, we may experience a further impairment of *Turbo's* remaining carrying costs if the uncertain components of our future revenues (e.g., those related to international home entertainment sales and some consumer products licensing activity) do not materialize as currently expected. A reduction of 10% in our estimated future revenues would result in an additional impairment charge of approximately $5 million to $10 million. Conversely, if our future revenues are greater than currently estimated, our future amortization rate with respect to *Turbo's* remaining capitalized costs would be reduced.

\*       \*       \*

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

### 6.    Film and Other Inventory Costs

The Company evaluates its film and other inventory costs to determine whether the unamortized capitalized costs of any titles have a fair value that is less than its carrying value. Refer to Note 2 for a description of the Company's accounting policy related to evaluating film and other inventory costs for impairment. During the years ended December 31, 2013 and 2012, the Company performed fair value analysis to determine whether the unamortized film inventory costs for certain of its titles were impaired as a result of the lower-than-expected performance of the titles. Key assumptions used in the fair value measurements were discount rates ranging from 7% to 11% and estimated remaining cash flows over a period of approximately 10 years. As a result of the analysis, during the years ended December 31, 2013 and 2012, the Company recorded impairment charges totaling $20.2 million (of which $13.5 million related to *Turbo*) and $89.3 million (of which $86.9 million related to *Rise of the Guardians*), respectively, resulting in remaining carrying value totaling $102.3 million and $71.0 million as of December 31, 2013 and 2012, respectively. A change in the discount rate of 1.0% would change the fair value measurements by $1.7 million and $1.3 million for the years ended December 31, 2013 and 2012, respectively. No impairment charges were recorded on film and other inventory costs during the year ended December 31, 2011.

31.    On April 29, 2014, the Company issued a press release and filed a Form 8-K, announcing its financial and operating results for the first quarter ended March 31, 2014. Net loss was $42.94 million, or $0.51 per diluted share, on revenues of $147.24 million, compared net income of $5.58 million or $0.07 per diluted share on revenues of $134.65 million for the same period in the prior year.

32.    In the press release, the Company stated, in part:

> *Turbo* contributed feature film revenue of $22.3 million to the first quarter, primarily from domestic pay television. The film reached an estimated 4.8 million home entertainment units sold worldwide through the end of the first quarter, net of actual and estimated future returns.

33.    On April 30, 2014, the Company filed a quarterly report on Form 10-Q with the SEC which was signed by defendant Coleman, and reiterated the Company's previously announced quarterly and year-end financial results and financial position. In addition, the Form 10-Q contained SOX certifications signed by defendants Katzenberg and Coleman, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

34.    The statements referenced in ¶¶ 24–33 above were materially false and misleading because Defendants made false and/or misleading statements, and failed to disclose material adverse facts about the Company's business, operations, prospects and performance.  Specifically, during the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) DreamWorks failed to take a write-down for its Turbo movie in a timely fashion; (ii) as a result, the Company's net income for the fiscal year of 2013 was materially overstated; (iii) the Company lacked adequate internal and control over financial reporting; and (iv) as a result of the above,

the Company's financial statements were materially false and misleading at all relevant times.

## The Truth Emerges

35.     On May 22, 2014, the Company filed a Form 8-K with the SEC, announcing the abrupt resignation of its Chief Accounting Officer, Heather O'Connor. In the 8-K, the Company stated, in part:

> On May 19, 2014, DreamWorks Animation SKG, Inc. (the "Company") received a letter from Heather O'Connor, the Company's Chief Accounting Officer, submitting her resignation from the Company effective as of June 13, 2014. Ms. O'Connor indicated that she has accepted a senior financial position with a different company located in the Los Angeles area. Upon Ms. O'Connor's departure from the Company in June 2014, Lewis Coleman, the Company's Chief Financial Officer, will assume the title of Chief Accounting Officer.

36.     On July 29, 2014, during a conference call with analysts, DreamWorks Animation revealed that the Company is under investigation by the Securities and Exchange Commission for a $13.5 million write-down the studio took in February in relation to the poor performance of Turbo. The company said it is cooperating with authorities but wouldn't elaborate on the investigation.

37.     On the news, shares in DreamWorks fell $2.68 or almost 12%, in extremely heavy trading volume, to close at $19.98 on July 30, 2014.

38.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'CLASS ACTION ALLEGATIONS

39.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who

purchased or otherwise acquired DreamWorks securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

40.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the DreamWorks Class Period, securities of DreamWorks were actively traded on the NASDAQ Global Select Market. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by DreamWorks or their transfer agents and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

41.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law complained of herein.

42.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class action and securities litigation.

43.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of DreamWorks;

- whether the Individual Defendants caused DreamWorks to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of DreamWorks securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and,

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

44. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

45. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- DreamWorks securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold DreamWorks securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

46.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

47.     Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Against All Defendants

48.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

50.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of

material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of DreamWorks securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire DreamWorks securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

51. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for DreamWorks securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about DreamWorks's finances and business prospects.

52. By virtue of their positions at DreamWorks, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily

available to Defendants.   Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

53.   Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of DreamWorks securities from their personal portfolios.

54.   Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of DreamWorks, the Individual Defendants had knowledge of the details of DreamWorks's internal affairs.

55.   The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of DreamWorks.   As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to DreamWorks's businesses, operations, future financial condition and future prospects.   As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of DreamWorks securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning DreamWorks's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired DreamWorks securities at artificially inflated

prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

56.    During the Class Period, DreamWorks securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of DreamWorks securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of DreamWorks securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of DreamWorks securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

57.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

58.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Violation of Section 20(a) of
### The Exchange Act Against The Individual Defendants

59.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60.    During the Class Period, the Individual Defendants participated in the operation and management of DreamWorks, and conducted and participated, directly and indirectly, in the conduct of DreamWorks's business affairs.  Because of their senior positions, they knew the adverse non-public information about DreamWorks's misstatement of income and expenses and false financial statements.

61.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to DreamWorks's financial condition and results of operations, and to correct promptly any public statements issued by DreamWorks which had become materially false or misleading.

62.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which DreamWorks disseminated in the marketplace during the Class Period concerning DreamWorks's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause DreamWorks to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of DreamWorks within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of DreamWorks securities.

63.     Each of the Individual Defendants, therefore, acted as a controlling person of DreamWorks.  By reason of their senior management positions and/or being directors of DreamWorks, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, DreamWorks to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of DreamWorks and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

64.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by DreamWorks.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands a trial by jury.

Dated:  August 1, 2014

**GLANCY BINKOW & GOLDBERG  LLP**

By: <u>*s/ Lionel Z. Glancy*</u>
Lionel Z. Glancy
Michael Goldberg
Robert V. Prongay
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**POMERANTZ LLP**
Jeremy A. Lieberman
Francis P. McConville
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile:  212-661-8665

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.  I, _Charles Paddock_, make this declaration pursuant to Section

27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange

Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against DreamWorks SKG Inc. ("DreamWorks" or the "Company"),

and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire DreamWorks securities at the direction of plaintiffs counsel or in

order to participate in any private action arising under the Securities Act or Exchange Act.

4.  I am willing to serve as a representative party on behalf of a Class of investors who purchased or

acquired DreamWorks securities during the class period, including providing testimony at deposition and

trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in

this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in

DreamWorks securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not

sought to serve as a representative party on behalf of a class under the federal securities laws.

7.  I agree not to accept any payment for serving as a representative party on behalf of the class as

set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and

expenses directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.

Executed _____
          (Date)


_____
          (Signature)

_____
          (Type or Print Name)

**DreamWorks Animation SKG Inc. (DWA)**     **Paddock, Chuck**

**LIST OF PURCHASES AND SALES**

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 07/03/2014 | PUR | 5,296 | $23.9400 |

paddock