UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

| | | |
|---|---|---|
| **CASE NO.:** | CV 14-06053 SJO (Ex) | **DATE:** April 1, 2015 |
| **TITLE:** | Charles Paddock v. Dreamworks Animation SKG, Inc., et al. | |

========================================================================
**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz
Courtroom Clerk

Not Present
Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**

Not Present

**COUNSEL PRESENT FOR DEFENDANTS:**

Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** [Docket No. 48]

This matter is before the Court on Defendants DreamWorks Animation SKG, Inc. ("DreamWorks"), Lewis W. Coleman, and Jeffrey Katzenberg's (collectively, "Defendants") Motion to Dismiss ("Motion"), filed on December 22, 2014. (ECF No. 48.) Lead Plaintiff Roofers Local No. 149 ("Plaintiff") filed an Opposition on January 26, 2015, to which Defendants filed a Reply on February 9, 2015. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for February 16, 2015. *See* Fed. R. Civ. P. 78(b). For the reasons set forth below, the Motion is **GRANTED**.

I.  PROCEDURAL AND FACTUAL BACKGROUND

DreamWorks develops and exploits branded family entertainment, including computer-generated animated feature films, television specials and series, live entertainment properties, and related consumer products. (Consolidated Compl. ("Compl.") ¶ 2, ECF No. 42.) This is a federal securities case concerning the damages from allegedly fraudulent material statements and omissions, including a delay in writing down the losses associated with an animated DreamWorks film named "Turbo." On August 1, 2014, the first of three securities class action complaints was filed in this Court. (Class Action Compl., ECF No. 1.) On October 22, 2014, the Court consolidated the existing cases into a single action, pursuant to Federal Rule of Civil Procedure 42, and appointed Plaintiff as Lead Plaintiff for the class. (October 22, 2014 Minute Order, ECF No. 35.)

On November 25, 2014, Plaintiff then filed a Consolidated Complaint ("Complaint") on behalf of all purchasers of DreamWorks common stock between July 31, 2013 and July 29, 2014, inclusive (the "Class Period") against DreamWorks, its Chief Executive Officer ("CEO"), and its former Chief Financial Officer ("CFO") for violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") ("Section 10(b)") and Securities and Exchange Commission ("SEC") Rule ("SEC Rule") 10b–5. (Compl. ¶¶ 85-96.) Katzenberg is DreamWorks' co-founder and served as its CEO and member of its Board of Directors during the Class Period, and spoke on behalf of

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 14-06053 SJO (Ex)</u>     DATE: <u>April 1, 2015</u>

DreamWorks in releases, conference calls, and SEC filings. (Compl. ¶ 21.) Coleman was DreamWorks' President, CFO, and a member of its Board of Directors throughout the Class Period, and became the acting CAO in June 2014. (Compl. ¶ 22.) Effective August 1, 2014, Coleman was named Vice-Chairman of the Board and no longer served as President, and effective August 18, 2014, he no longer served as CFO. (Compl. ¶ 22.) Plaintiff also alleges that Katzenberg and Coleman are liable as DreamWorks' control persons under § 20(a) of the Exchange Act ("Section 20(a)"). (Compl. ¶¶ 97-99.)

According to Plaintiff, Defendants violated Section 10(b) by stating that Turbo would be profitable in connection with DreamWorks' earnings announcements in the second and third fiscal quarters of 2013, and by failing to record an impairment charge on the film in the third fiscal quarter of 2013.[1] (Compl. ¶¶ 45-55, 10-14.) Plaintiff argues that because Defendants knew or recklessly disregarded that Turbo's ultimate revenues would not exceed its unamortized costs, their statements relating to Turbo's current or future profitability were unqualified, materially false, and misleading. (Compl. ¶¶ 4-10.) Plaintiff further alleges that Defendants' statements caused DreamWorks' stock price to trade at artificially inflated levels, which in turn caused the plaintiff class to suffer economic loss when the stock price dropped over 12% following DreamWorks' allegedly delayed February 25, 2014 announcement of a $13.5 million impairment charge related to Turbo.[2] (Compl. ¶¶ 11-12.) Plaintiff alleges further economic harm to the class when the stock price dropped another 12% after DreamWorks' July 29, 2014 announcement that the SEC had begun an investigation in May 2014 into the write-down of film inventory related to Turbo. (Compl. ¶¶ 13-14.)

On December 22, 2014, Defendants filed the instant Motion, pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). In the Motion, Defendants seek dismissal with prejudice of all of Plaintiff's claims on the grounds that the facts alleged in the Complaint are insufficient to establish loss causation, falsity, and scienter, which are three of the six elements needed to adequately state a claim upon which relief can be granted under Section 10(b). (Mot. 8-9.)

---

[1] DreamWorks' quarterly financial periods end on March 31, June 30, September 30, and December 31. (Compl. ¶ 4, n.1.) The Court will adopt Plaintiff's abbreviations signifying the quarter and year in question, such as "2Q13" for the second fiscal quarter of 2013. (Compl. ¶ 4, n.1.) Plaintiff alleges that DreamWorks' 2Q13 earnings call was held on the first day of the Class Period, July 31, 2013, for the quarter that ended June 30, 2013. (Compl. ¶ 45.) Plaintiff also alleges that DreamWorks' 3Q13 earnings call was held on October 29, 2013, for the quarter that ended September 30, 2013, thus putting that call also within the Class Period. (Compl. ¶ 51.)

[2] As Plaintiff's Complaint alleges, "[f]or companies like DreamWorks, accounting rules require that if a film's estimated ultimate revenues are insufficient to recover the unamortized film costs, the unamortized film costs must be written down to fair value and an impairment charge must be recorded." (Compl. ¶ 8.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 14-06053 SJO (Ex)</u>　　　　DATE: <u>April 1, 2015</u>

Plaintiff filed an Opposition on January 26, 2015, to which Defendants filed a Reply on February 9, 2015. (ECF Nos. 51, 54.)

II.　　DISCUSSION

　　A.　　<u>Legal Standard for Plaintiff's Claims</u>

　　　　1.　　<u>Section 10(b) and SEC Rule 10b–5</u>

Section 10(b) makes it unlawful to "use or employ, in connection with the purchase or sale of any security. . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary. . ."  15 U.S.C. § 78j(b).  SEC Rule 10b–5 implements Section 10(b) by making it unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading[.]"  17 C.F.R. § 240.10b–5.

To plead a claim under Section 10(b) and Rule 10b–5, a plaintiff must allege: (1) a material misrepresentation or omission (falsity); (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.  *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 603 (9th Cir. 2014) (*citing Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 157 (2008)).

　　　　2.　　<u>Section 20(a)</u>

In order to prove a prima facie case under Section 20(a), a plaintiff must prove: (1) a primary violation of federal securities law; and (2) that the defendant exercised actual power or control over the primary violator.  *No. 84 Emp'r–Teamster Joint Council Pension Trust Fund v. Am. West. Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003).  Section 20(a) claims may be dismissed summarily if a plaintiff fails to adequately plead a primary violation of Section 10(b).  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir.2009).  "Accordingly, our analysis focuses on Plaintiff['s] allegations under Section 10(b) and Rule 10b–5."  *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014).

　　B.　　<u>Pleading Standards</u>

The Ninth Circuit has cautioned that "plaintiffs in private securities fraud class actions face formidable pleading requirements to properly state a claim and avoid dismissal under [Rule 12(b)(6)]."  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008).

　　　　1.　　<u>Motion to Dismiss</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: CV 14-06053 SJO (Ex)     DATE: April 1, 2015

Rule 12(b)(6) permits a defendant to seek dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The Court accepts all factual allegations in the Complaint as true and construes them in the light most favorable to the nonmoving party, except the Court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged. *Id.* The Court's review "is limited to the complaint, materials incorporated into the complaint by reference, and matters of which the [C]ourt may take judicial notice." *Metzler*, 540 F.3d at 1061. The Court should grant relief under Rule 12(b)(6) if the complaint lacks either a cognizable legal theory or facts sufficient to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

> 2. Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA") Pleading Requirements

Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") and the Private Securities Litigation Reform Act of 1995 ("PSLRA") set forth additional pleading requirements. *Reese v. Malone*, 747 F.3d 557, 568 (9th Cir. 2014). Rule 9(b) requires a plaintiff alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba–Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted). This requirement extends to all elements of a securities fraud action. *Or. Pub. Emps. Ret. Fund*, 774 F.3d at 605.

In addition to Rule 9(b)'s heightened pleading requirements for allegations of fraud, the PSLRA requires that a Section 10(b) complaint plead with particularity both falsity and scienter. *Zucco*, 552 F.3d at 990–91.

> a. Pleading Requirements for Falsity

As to falsity, the complaint must state with particularity each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and all facts on which that belief is formed. 15 U.S.C. § 78u–4(b)(1); *In re Daou Sys.*, 411 F.3d 1006, 1014 (9th Cir. 2005) (citation omitted). If an allegation regarding the statement or omission is made on information and belief, the complaint must "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: **CV 14-06053 SJO (Ex)**          DATE: **April 1, 2015**

      b.     Pleading Requirements for Scienter

Scienter is defined as "a mental state embracing intent to deceive, manipulate, or defraud." *Reese*, 747 F.3d at 568. To adequately plead scienter, the complaint must state with particularity facts giving rise to a strong inference that the defendant made false or misleading statements either intentionally or with deliberate recklessness. 15 U.S.C. § 78u–4(b)(2); *In re Daou Sys.*, 411 F.3d at 1015. "Deliberate recklessness means that the reckless conduct 'reflects some degree of intentional or conscious misconduct.'" *Reese*, 747 F.3d at 569 (quoting *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008)). Thus, "[f]acts showing mere recklessness or a motive to commit fraud and opportunity to do so provide some reasonable inference of intent, but are not independently sufficient" to establish a strong inference of deliberate recklessness. *Reese*, 747 F.3d at 569 (citing *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir.1999), abrogated on other grounds by *S. Ferry LP*, 542 F.3d at 784). To meet the requirements of the PSLRA, the plaintiff must plead "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Zucco*, 552 F.3d at 991 (internal citation and quotations omitted).

"Recently, the Ninth Circuit instructed that courts should conduct a holistic review of the allegations to determine whether they combine to create a strong inference of intentional or deliberate recklessness, while also keeping in mind the individual allegations and the inferences drawn from them." *City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, No. CV 09-00368 SAB, 2014 WL 4656240, at *3 (E.D. Wash. Sept. 17, 2014) (citing *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 703 (9th Cir. 2012)). The Court must ask: "When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007).

      C.     Analysis

Here, Defendants attack Plaintiff's Section 10(b) claim as failing to properly plead three elements: (1) falsity, (2) scienter, and (3) loss causation. (Mot. 8-9.) Defendants argue that Plaintiff's claim fails because Plaintiff (1) has not identified a material misstatement regarding Turbo's profitability, (2) cannot plead that Defendants acted with the requisite fraudulent intent or deliberate recklessness, and (3) cannot establish any corrective disclosure providing a causal link between any alleged fraudulent activity and the economic loss suffered by the plaintiff class. (Mot. 1-2.)

For the reasons stated below, the Court finds that Plaintiff has not alleged sufficient facts to support each element and accordingly grants Defendants' motion to dismiss Plaintiff's Section 10(b) claim and 20(a) claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: CV 14-06053 SJO (Ex)           DATE: April 1, 2015

1. Scienter and Falsity

Plaintiff cites a decision that notes "[t]he scienter and falsity inquiries overlap significantly." *In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 808 (C.D. Cal. 2011); *see* Opp'n ¶¶ 4, 5, 14. That decision references *Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001), which explains:

> Because falsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts, we have incorporated the dual pleading requirements of 15 U.S.C. §§ 78u–4(b)(1) and (b)(2) into a single inquiry. In considering whether a private securities fraud complaint can survive dismissal under Rule 12(b)(6), we must determine whether "particular facts in the complaint, taken as a whole, raise a strong inference that defendants intentionally or with 'deliberate recklessness' made false or misleading statements to investors."

253 F.3d 423, 429 (9th Cir. 2001) (quoting *In re Silicon Graphics Inc.*, 183 F.3d at 979). "The Ninth Circuit recently re-iterated that falsity may itself be indicative of scienter where it is combined with allegations regarding a management's role in the company that are particular and suggest that the defendant had actual access to the disputed information, and where the nature of the relevant fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter." *In re MannKind Sec. Actions*, 835 F. Supp. 2d at 808-09 (quoting *Zucco*, 552 F.3d at 1000).

Here, Plaintiff bases its allegation of scienter in part on the assertion that Defendants knew or recklessly disregarded facts that demonstrate the falsity of their misstatements made during certain earnings calls regarding Turbo's current or potential profitability, "for the purpose and effect of concealing DreamWorks' operating condition and financial status from the investing public and supporting the artificially inflated price of its common stock." (Compl. ¶ 91.)

Plaintiff also bases its allegation of scienter on a variety of other circumstantial evidence surrounding Turbo's poor performance, such as: (1) Defendants' purported violations of generally accepted accounting principles, or GAAP (Compl. ¶¶ 46(a), 48, 50, 54(a)-(b), 55; Opp'n 11-13); (2) an August 2013 DreamWorks announcement that the company had raised $300 million in a debt offering (Compl. ¶¶ 6, 54(d); Opp'n 13-14); and (3) the resignation of DreamWorks' Chief Marketing Officer a few weeks after Turbo's domestic release, as well as the May 2014 resignation of DreamWorks' Chief Accounting Officer. (Compl. ¶¶ 49, 62; Opp'n 14-15.)

Because of the overlapping nature of the falsity and scienter inquiries, the Court will first examine whether Plaintiff has made a sufficient showing of scienter with regard to the allegedly false statements during the earnings calls in question, and then determine whether the other bases alleged are sufficient to establish scienter.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: <u>CV 14-06053 SJO (Ex)</u>   DATE: <u>April 1, 2015</u>

a.  <u>Alleged Falsity of Earnings Calls Statements</u>

As outlined above, the PSLRA dictates that the plaintiff's complaint "shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1).

Plaintiff argues the Complaint satisfies this more exacting standard by alleging that as of Turbo's opening weekend in the United States (July 19-21, 2013), (*see* Compl. ¶ 44), Defendants "had no reasonable basis to expect (and did not in fact expect)" that Turbo could be profitable, (*see* Compl. ¶ 46(a)(I)), yet said: (1) "Turbo will be a profitable film" during the 2Q13 earnings call on July 31, 2013 (Compl. ¶¶ 4-5); (2) "Turbo is a profitable movie" during the 3Q13 earnings call on October 29, 2013 (Compl. ¶ 9); and (3) "Turbo was a profitable film" during the same call. (Compl. ¶ 52; *see* Opp'n 3.)

In addition, Plaintiff argues the falsity of the disputed statements is established because DreamWorks announced a $13.5 million impairment charge related to Turbo on February 25, 2014, in conjunction with the company's 4Q13 and fiscal year 2013 earnings announcements. (Compl. ¶ 56; *see* Opp'n 6.) Along these lines, Plaintiff also argues falsity is established by alleging "DreamWorks violated GAAP by overstating Turbo's ultimate revenues, which in turn, overstated the remaining future cash flows of the film so that its fair value remained higher than its unamortized production costs, thereby avoiding an impairment charge." (Compl. ¶ 54(c); *see* Opp'n 3-4.)[3]

Defendants contend Plaintiff has engaged in fraud-by-hindsight (*see* Reply 2-3), which the Ninth Circuit describes as when a complaint "simply contrast[s] a defendant's past optimism with less favorable actual results." *City of Roseville*, 2014 WL 4656240 at *12 (citing *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084–85 (9th Cir. 2002), *abrogated on other grounds by S. Ferry LP*, 542 F.3d at 784 ("The purpose of this heightened pleading requirement was generally to eliminate abusive securities litigation and particularly to put an end to the practice of pleading 'fraud by hindsight.'")).

---

[3] Plaintiff cites to *In re Daou Sys.*, 411 F.3d 1006, 1018-20, 1022 (9th Cir. 2005), for the proposition that "GAAP violations can support both falsity and scienter" but includes alleged GAAP violations in support of its falsity analysis because "[f]inancial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate." (Opp'n 4 n.3 (quoting *Middlesex Ret. Sys. v. Quest Software, Inc.*, No. CV 06-6863 DOC (RNBx), 2008 WL 7084629, at *6 (C.D. Cal. July 10, 2008).)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

| | |
|---|---|
| **CASE NO.:** CV 14-06053 SJO (Ex) | **DATE:** April 1, 2015 |

In particular, Defendants argue Plaintiff pleaded no facts to demonstrate that any of the earnings calls statements were false based on the information then available to Defendants, and that Plaintiff did not challenge the figures and estimates cited by Defendants for the conclusion that Turbo would be profitable when those statements were made. (Mot. 12.) Defendants also argue that any alleged GAAP violation is fabricated and conclusory. (Mot. 15; Reply 3-4.)

As an initial matter, the Court finds that Plaintiff's Opposition somewhat misconstrues the allegedly false statements from the 2Q13 and 3Q13 earnings calls.[4] The Opposition asserts that the Complaint pleads that Defendants said Turbo "will be," "is," and "was" profitable. In fact, this assertion ignores some context surrounding those statements, which Plaintiff itself recognized in its own Complaint. For example, during the 2Q13 earnings call, Defendant Katzenberg did not simply say "Turbo will be a profitable film," but instead said "based on the data that we have to date, we do believe that Turbo will be a profitable film." (Compl. ¶ 5.) Moreover, despite Plaintiff's insistence that Katzenberg "unequivocally" stated "Turbo is a profitable movie" during the 3Q13 earnings call, (*see* Opp'n 3), Plaintiff's Complaint makes clear that Katzenberg actually said "based on the information we have today, we believe that Turbo is a profitable movie." (Compl. ¶ 9.) During that same call, Defendant Coleman also said "we believe that Turbo was a profitable film on an ultimate basis." (Compl. ¶ 52.)

Though the difference is minor, Plaintiff uses that difference to then conclusorily assert, based on Plaintiff's own analysis of Turbo's potential for profitability, that Defendants "had no basis to expect (and did not in fact expect)" Turbo to be profitable. (Compl. ¶¶ 46-55.) Plaintiff then reasons that because Defendants could not have expected Turbo to be profitable, Defendants' earnings calls statements must have been fraudulent at the time they were made, thereby satisfying Section 10(b) and Rule 10b–5. (Opp'n 3-6; *see* 15 U.S.C. § 78u–4(b)(1).)

In its Complaint and Opposition, Plaintiff at various points cites to its analysis of Turbo's domestic box office gross and production costs, the equivalent figures of previous DreamWorks films, and

---

[4] This is evident after an examination of the full statements made during these calls, which Plaintiff argues the Court cannot do. (Opp'n 3 n.2.) In adjudicating a motion to dismiss, courts may "take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d at 986). Plaintiff refers to the earnings calls in the Complaint, (see Compl. ¶¶ 4-5, 9, 52), but did not attach the transcripts of those calls to the Complaint. Because Plaintiff's claims depend on statements made during those calls, Defendants attached their transcripts to the Motion, and the parties do not dispute their authenticity. Thus, the Court considers the transcripts per the "incorporation by reference" doctrine. *See Knievel*, 393 F.3d at 1076 (citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: CV 14-06053 SJO (Ex)    DATE: April 1, 2015

Turbo's particular home entertainment, consumer products, and television segments to support its contention that the disputed statements during the earnings calls were false. (*See* Compl. ¶¶ 46, 54; *see* Opp'n 3-6.) Plaintiff then uses this analysis to allege GAAP violations. (Compl. ¶ 54(c); Opp'n 3-4.) Plaintiff also alleges that the fact that DreamWorks later announced an impairment charge in relation to Turbo reveals that the company's earlier reported financial results must have been false. (Opp'n 6.)

Even accepting all these assertions as true, the Court acknowledges that "[g]enerally accepted accounting principles tolerate a range of reasonable treatments, leaving the choice among alternatives to management." *Or. Pub. Emps. Ret. Fund*, 774 F.3d at 609 (quoting *Thor Power Tool Co. v. C.I.R.*, 439 U.S. 522, 544 (1979)). Thus, the Court finds Plaintiff's Complaint does not meet the pleading standard of the PSLRA because "[a]t best, these calculations represent Plaintiff's *opinion* as to how [Defendants] could have or should have [made its calculations], and are not a substitute for *facts* describing how [Defendants] actually conducted its analysis." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, No. CV 12-06039 BLF, 2014 WL 4180845, at *8-9 (N.D. Cal. Aug. 22, 2014) (emphases in original).

Thus, as to falsity, the Complaint "does not plead facts that show that company insiders knew what the complaint says 'would' occur in what was then the future." *Ronconi*, 253 F.3d at 430 ("That a pessimistic argument could have been made against the [merger in dispute], and that had they known in September what they learned by the following May they would not have spoken so optimistically, does not raise a strong inference that defendants actually knew their forward looking statements to investors were false or misleading when made.").

Moreover, after considering authority cited by Plaintiff, the Court finds it difficult to adopt Plaintiff's own theory of falsity based on the facts alleged, without more. For example, Plaintiff cites to *Smilovits v. First Solar, Inc.*, No. CV 12-00555 DGC, 2012 WL 6574410 (D. Ariz. Dec. 17, 2012), to support its contention that Defendants engaged in "[a]ctive manipulation of an important and widely reported metric," and that Plaintiff is not merely "quibbling with [Defendants'] statistical methodology–a tactic the Ninth Circuit rejected in *In re Rigel Pharms. Inc. Sec. Litig.*, 697 F.3d 869, 877–78 (9th Cir. 2012)." *Smilovits*, 2012 WL 6574410 at *4. In *Smilovits*, however, the plaintiff provided extensive testimony from several confidential witnesses, including one who received a complaint about a meeting where Defendants discussed manipulating a key cost-per-watt metric of solar panel modules they produced, as well as other witnesses who alleged personal knowledge of Defendants' awareness and concealment. *See Smilovits*, 2012 WL 6574410, at *2-4.

Here, in contrast, Plaintiff has provided no testimony of confidential witnesses, nor anything else beyond its own financial analysis of Turbo's potential for profitability, before attempting to tie that analysis to the fact that DreamWorks later recorded an impairment charge related to Turbo as evidence that Defendants' statements during the earnings calls were false when made. *See City*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

**CASE NO.:** CV 14-06053 SJO (Ex)    **DATE:** April 1, 2015

*of Dearborn*, 2014 WL 4180845 at *8 (granting a motion to dismiss because the plaintiff argued the defendant should have recorded an impairment charge earlier, but "has not identified internal documents or confidential witness testimony showing that [the defendant's analysis] was performed on unreasonable assumptions and that [the defendants] knew this was the case"). Even taking all of Plaintiff's extensive analysis as true, the Court finds that the resulting allegations at best support an inference that Defendants operated under "unreasonable assumptions" in projecting profitability for Turbo, but do not necessarily show that Defendants "knew this was the case." *Id.*

The Court therefore believes that Plaintiff's argument, as presented, leads to one of the "unwarranted inferences" that "it is not required to indulge" when considering a motion to dismiss. *Metzler*, 540 F.3d at 1064 (citing *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)).

Accordingly, as to scienter, the Complaint also lacks "specific allegations that Defendants either knew or recklessly disregarded the falsity of its own statements at the time the statements were made," and without more, "the fact that the statements later turned out to be false is irrelevant to a cause of action under the PSLRA." *City of Roseville*, 2014 WL 4656240 at *12 (citing *Novak v. Kasaks*, 216 F.3d 300, 309 (2nd Cir. 2000) ("[A]llegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud.")).

As such, Plaintiff's Complaint aligns more closely to fraud-by-hindsight claims initially targeted by the heightened pleading standard at issue here. Indeed, in a recent district court decision from this Circuit where shareholders brought a similar lawsuit against a bank holding company, its CEO, and its CFO, the court granted the company's motion to dismiss, noting that:

> Although Plaintiff's complaint contains additional allegations to demonstrate unsafe and unsound practices and fraudulent financial reporting, such as unwise lending practices, overstatement of goodwill in 2Q08 and 3Q08, false and misleading statements about the reasons for the unexpected loan losses and goodwill impairment, failing to maintain an adequate [Allowance for Loan and Lease Losses], and failing to obtain updated appraisals or valuations, these allegations reflect an in-hindsight assessment of Defendants' performance and conduct[.]

*City of Roseville*, 2014 WL 4656240 at *12. Thus, for the reasons discussed, Plaintiff has not pled sufficient facts to show that the alleged misstatements support a claim of falsity, nor do they support the contention that Defendants made the statements with the requisite knowledge or deliberate recklessness needed to support an allegation of scienter. Because Plaintiff has not adequately established the falsity of the statements made during the earnings calls, Plaintiff's allegations that falsity is established from GAAP violations and a later impairment charge also fail, as these allegations depend on the falsity of those disputed earnings calls statements.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

**CASE NO.:** CV 14-06053 SJO (Ex)         **DATE:** April 1, 2015

      b.      Plaintiff's Other Allegations of Scienter

As mentioned above, Plaintiff brings other allegations of scienter aside from its overlapping allegations of falsity, such as: (1) Defendants' purported violations of generally accepted accounting principles, or GAAP (Compl. ¶¶ 46(a), 48, 50, 54(a)-(b), 55; Opp'n 11-13); (2) an August 2013 DreamWorks announcement that the company had raised $300 million in a debt offering (Compl. ¶¶ 6, 54(d); Opp'n 13-14); and (3) the resignation of DreamWorks' Chief Marketing Officer a few weeks after Turbo's domestic release, as well as the May 2014 resignation of DreamWorks' Chief Accounting Officer. (Compl. ¶¶ 49, 62; Opp'n 14-15.) Plaintiff also argues a strong inference of scienter is raised in part because of Defendants Katzenberg and Coleman's roles within DreamWorks, and because the profitability of Turbo was particularly important corporate information. (Compl. ¶¶ 24, 56-58; Opp'n 9-11.)

Plaintiff contends that these allegations, if considered collectively, rise to a strong inference that Defendants deliberately or recklessly concealed the fact that Turbo was not profitable because of the likely adverse effect that fact would have on the market. (Compl. ¶¶ 45-54; Opp'n 7-8.) Defendants argue that none of Plaintiff's allegations, individually or together, are sufficient to raise a strong inference that Defendants deliberately or recklessly acted with intent to defraud. (Mot. 16-17; Reply 4-5.)

Defendants further note that "the Complaint's central flaw with respect to scienter is the absence of allegations suggesting a reason why Defendants would have committed the alleged fraud[,]" noting in particular that "[n]one of the alleged facts demonstrates a benefit Defendants would have received by delaying the announcement of the impairment charge by a few months." (Mot. 19.) If anything, Defendants argue, the most plausible inference raised from the facts alleged is that "Defendants believed at the time of the 2Q13 and 3Q13 statements, based on specific, articulated reasons, that Turbo would be profitable and concluded later in 4Q13, based on fourth-quarter performance, that an impairment had become necessary." (*Id.*)

Even with a holistic review of all of Plaintiff's allegations, the Court does not find that Plaintiff alleged sufficient facts to establish scienter. "[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). In addition, "[a] court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." *Zucco*, 552 F.3d at 991 (citing *Tellabs*, 551 U.S. at 323).

As such, the Court finds that alleged GAAP violations, a debt offering, the inherent responsibilities of the CEO and CFO, and the resignations of two executives—not only in conjunction with any allegedly false statements during the earnings calls, but also independent of such

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

| CASE NO.: CV 14-06053 SJO (Ex) | DATE: April 1, 2015 |
|---|---|

statements—would not cause a reasonable person to deem the inference of scienter at least as strong as any opposing inference. See *Tellabs*, 551 U.S. at 326.

Within this holistic analysis, though, the Court notes particular deficiencies with several of Plaintiff's individual allegations, and will address them below.

> I. GAAP Violations and Individual Defendants' Roles Within Company

Regarding the alleged GAAP violations, "[t]he mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter." *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994) (internal quotations omitted). Indeed, as Plaintiff notes, (*see* Opp'n 11), "to plead fraudulent intent based on GAAP violations, plaintiffs must allege facts showing that: (1) specific accounting decisions were improper; and (2) the defendants knew specific facts at the time that rendered their accounting determinations fraudulent." *In re Connetics Corp. Sec. Litig.*, No. CV 07-02940 SI, 2008 WL 3842938, at *9 (N.D. Cal. Aug. 14, 2008) (internal quotations omitted).

Here, Plaintiff first contends that because DreamWorks' ultimate revenue estimates were overseen by the CFO and CAO, and were thereafter "monitored, reviewed, and revised on a monthly basis," (Compl. ¶ 41), Defendants were therefore aware of the relevant GAAP standards. (Opp'n 11.) From there, Plaintiff again cites to its analysis that Turbo's opening weekend box office results made it unreasonable for Defendants to expect Turbo to be profitable, which then meant that "[b]y ignoring the current performance of Turbo," Defendants violated GAAP by materially overstating and understating certain figures in its 3Q13 financial results. (Opp'n 12.)
Plaintiff also alleges that Defendants knew of their fraudulent financial reporting because DreamWorks had recorded three other impairment charges for previous films several weeks earlier than the charge related to Turbo. (Compl. ¶¶ 54(c)(I), 54(f); Opp'n 12.) On three separate occasions, Plaintiff also provides unsupported allegations that "analysts" had expected less positive information from Defendants regarding Turbo's profitability, and then uses those allegations to support the contention that specific facts were "available to defendants contemporaneously with their false statements" that would have made Defendants aware of their fraudulent accounting. (Compl. ¶¶ 44, 50, 55; Opp'n 13.)

Next, as to Katzenberg and Coleman's roles within DreamWorks, Plaintiff cites authority explaining that "[a]llegations regarding management's role in a corporate structure and the importance of the corporate information about which management made false or misleading statements may also create a strong inference of scienter when made in conjunction with detailed and specific allegations about management's exposure to factual information within the company." *Maiman v. Talbott*, 2010 U.S. Dist. LEXIS 142712, at *16-17.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** CV 14-06053 SJO (Ex)          **DATE:** April 1, 2015

However, Plaintiff's references to Katzenberg and Coleman's roles within DreamWorks fall short of being sufficiently detailed and specific. Plaintiff asserts that as CEO and CFO, respectively, Katzenberg and Coleman signed DreamWorks' SEC filings and participated in earnings calls about the company's financial results each quarter. (Compl. ¶¶ 22-24, 51-53, 56-58; Opp'n 9.) Plaintiff also asserts that DreamWorks' finance and accounting departments, overseen by Coleman and the CAO, are responsible for the ultimate revenue estimates of each DreamWorks film. (Compl. ¶ 41; Opp'n 9.) Plaintiff next notes that Katzenberg "personally hosted Turbo's world premiere," (Compl. ¶ 44 n.4; Opp'n 9), and finally claims that films like Turbo historically comprised a substantial percentage of DreamWorks' revenue and that Turbo was one of only two films released in 2013. (Compl. ¶¶ 3, 40; Opp'n 9). Plaintiff argues that all of this information makes it "absurd to believe that defendants did not have knowledge of information contradicting their statements" made during the 2Q13 and 3Q13 earnings calls. (Opp'n 9 (internal quotations omitted).)

Though not explicitly stated in its opposition, Plaintiff appears to rely on the "core operations" theory in its attempt to establish scienter through the allegations of both GAAP violations and Katzenberg and Coleman's roles within DreamWorks. *See Reese*, 747 F.3d at 575-76 (discussing the "core operations inference" in relation to allegations regarding management's role in satisfying the PSLRA scienter requirement); *see also City of Dearborn*, 2014 WL 4180845 at *13 (discussing the same in relation to allegations of GAAP violations). As the Ninth Circuit noted in *Reese*, such allegations "may independently satisfy the PSLRA where they are particular and suggest that defendants had actual access to the disputed information," but otherwise, "in rare circumstances, such allegations may be sufficient, without accompanying particularized allegations, where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *Reese*, 747 F.3d at 575-76.
Indeed, the Ninth Circuit later remarked that "[p]roof under this theory is not easy" because "a plaintiff must produce either specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations, such as data monitoring; or witness accounts demonstrating that executives had actual involvement in creating false reports." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014) (affirming dismissal of the plaintiff's complaint where the complaint lacked allegations of specific admissions by the defendant's executives and contained accounts of witnesses who lacked direct access to the executives and reports in question). Here, Plaintiff's Complaint nowhere makes references to specific admissions from Katzenberg or Coleman, nor does it provide any witness accounts.

The problem with all of Plaintiff's allegations, both in relation to alleged GAAP violations and to Katzenberg and Coleman's roles within DreamWorks, "is that Plaintiff largely depends on supposition rather than facts to place each piece of information in the individual defendants' hands." *City of Dearborn*, 2014 WL 4180845 at *13 (rejecting Plaintiff's attempt to demonstrate scienter through GAAP violations with similar allegations, such as "it would be absurd to suggest that [the defendant's] management was without knowledge of the matter, as [the defendant's CEO

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

**CASE NO.:** CV 14-06053 SJO (Ex)  **DATE:** April 1, 2015

and CFO] were the ones that announced the Company's financial results each quarter, signed the Company's SEC filings, and were intimately involved in the [disputed transaction]"); *see also Police Ret. Sys.*, 759 F.3d at 1063 ("[T]his is not the 'rare circumstance' in which it would be 'absurd' to suggest that management was without knowledge of the contents of the reports because there are no allegations regarding discussions of the reports' contents—other than that some discussions occurred at some point. . .Mere access to reports containing undisclosed sales data is insufficient to establish a strong inference of scienter.").

"At best, these facts support a 'mere inference of [the defendants'] knowledge of all core operations,' not scienter," because "[m]issing are allegations linking specific reports and their contents to the executives." *Police Ret. Sys.*, 759 F.3d at 1062-63 (internal citations and quotations omitted). Accordingly, the Court does not see how these facts, as alleged, contribute to a finding of scienter that is "at least as compelling as an alternative innocent explanation," or a finding of ordinary negligence, in the alternative. *Zucco*, 552 F.3d at 1006.

## II. The Debt Offering

Plaintiff next claims that the nature and timing of a bond offering raised by DreamWorks contributes to the holistic view that the Complaint sufficiently alleges Defendants acted with scienter. (Opp'n 13-14.) More specifically, Plaintiff alleges that because Defendants knew Turbo was not profitable and therefore would not be meaningfully contributing to DreamWorks' 3Q13 revenues, the company needed to raise $300 million to continue funding its operations between the time Turbo was released and DreamWorks' next scheduled film release more than eight months later. (Compl. ¶¶ 54(d), 46(b), 6.) Defendants argue that Plaintiff fails to allege any facts that provide a link between Turbo and the bond offering that rises above "pure speculation." (Mot. 19.)

"Courts have held that a demonstration of a desire to raise company financing, combined with the 'red flags' of a company's financial condition, are sufficient to plead scienter." *Nguyen v. Radient Pharm. Corp.*, No. CV 11-0406 DOC, 2011 WL 5041959, at *8 (C.D. Cal. Oct. 20, 2011). To that end, courts have emphasized that "motive and opportunity alone are insufficient to show scienter at the pleading stage, but they may still be considered as circumstantial evidence of such." *Id.* at *9 (citation omitted).

Plaintiff claims that Defendants' motive here was to keep DreamWorks' stock price inflated, and notes that Katzenberg owned 100% of the company's Class B common stock.[5] (Opp'n 14 n.10.)

---

[5] In its Complaint, Plaintiff only alleges that DreamWorks' Class A shares of common stock were traded in an efficient market, NASDAQ. (Compl. ¶¶ 76, 77(b).) Plaintiff's only references to Katzenberg's Class B stock allege that such ownership entitled Katzenberg

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

**CASE NO.:**   CV 14-06053 SJO (Ex)              **DATE:** April 1, 2015

However, the Court finds no allegations of "red flags" in DreamWorks' financial situation that mirror those found in *Nguyen*, nor the case cited therein, *Howard v. Everex Sys., Inc.*, 228 F.3d 1057 (9th Cir. 2000), that go beyond Plaintiff's own analysis of Turbo's profitability and its implications for the overall health of DreamWorks.  *See Nguyen*, 2011 WL 5041959 at *8 (noting that "the facts here are similar" to those in *Howard*).

Plaintiff's own cited authority notes that allegations of a bond offering are not on their own sufficient to support an inference of scienter, and other facts, such as "deliberately reckless accounting violations," would be necessary. *In re Adaptive Broadband Sec. Litig.*, No. CV 01-1092 SC, 2002 WL 989478, at *16 (N.D. Cal. Apr. 2, 2002).  The Court notes that as discussed above the accounting violations alleged by Plaintiff do not rise to the level of deliberate recklessness.

In *Nguyen*, the Court found that the defendant's financial situation was sufficiently dire because the defendant company had reported revenue for the 2010 fiscal year at $231,662, while its operating expenses were over $14 million and its net loss was $85,711,853. *Id.* Here, in contrast, Plaintiff makes several references to the adverse effect Turbo's performance had on DreamWorks' stock prices during the Class Period, such as Turbo's alleged contribution to a gain of $0.12 cents earnings per share in 3Q13 followed by a loss of $0.12 cents earnings per share in 4Q13. (Compl. ¶¶ 51, 54(e), 56, 61, 65, 71.)  DreamWorks' financial situation does not appear to be as strained as the defendants in cases on which Plaintiff relies.  Thus, the Court finds that Plaintiff's Complaint does not demonstrate sufficient "red flags" to plead scienter under the PSLRA standard.

### III.    The Resignations of DreamWorks Executives

Next, Plaintiff argues that an inference of scienter is supported by the proximity in time between the resignation of DreamWorks' Chief Marketing Officer and Turbo's release, and between the resignation of DreamWorks' Chief Accounting Officer and an SEC investigation of the impairment charge related to Turbo.  (Compl. ¶¶ 6, 49, 13, 62; Opp'n 14-15.)  Defendants argue that much like the assertions raised in relation to DreamWorks' bond offering, Plaintiff here fails to allege facts that provide a link between Turbo's performance and the resignations, let alone how the resignations "suggest[] Defendants acted with deliberate recklessness or the intent to defraud the public."  (Mot. 19.)

Plaintiff notes that circumstantial evidence of high-level resignations only "add[s] one more piece to the scienter puzzle."  (Opp'n 14 (quoting *In re Adaptive Broadband Sec. Litig.*, 2002 WL 989478 at *14).)  "[A] plaintiff must allege sufficient information to differentiate between a suspicious

---

to "60% of the total voting power of DreamWorks common stock."  (Compl. ¶ 98(b), *see also* ¶ 21.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: CV 14-06053 SJO (Ex)          DATE: April 1, 2015

change in personnel and a benign one." *Zucco*, 552 F.3d at 1002. Moreover, as the Ninth Circuit noted in *Zucco*:

> Absent allegations that the resignation at issue was uncharacteristic when compared to the defendant's typical hiring and termination patterns or was accompanied by suspicious circumstances, the inference that the defendant corporation forced certain employees to resign because of its knowledge of the employee's role in the fraudulent representations will never be as cogent or as compelling as the inference that the employees resigned or were terminated for unrelated personal or business reasons.

*Id*. Here, Plaintiff argues that the resignation of the Chief Marketing Officer was suspicious because it came just weeks after Katzenberg's statement that Turbo "will be" profitable. (Compl. ¶¶ 6, 49.) Regarding the Chief Accounting Officer, Plaintiff argues that resignation was suspicious because it came in the same month that DreamWorks learned of an SEC investigation into Turbo. (Compl. ¶¶ 13, 62.) Plaintiff notes that while the Court could infer that these executives resigned for reasons unrelated to Turbo, the Court should find that these resignations indicate DreamWorks believed both executives were involved in the wrongdoing, especially in light of the additional allegations in the Complaint. (Opp'n 15.)

The Court declines to do so, as Plaintiff's own cited authority makes clear that additional facts accompanying high-level resignations are required to support an inference of scienter. *See In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 975-76 (N.D. Cal. 2009). In *In re UTStarcom*, the plaintiffs' allegations of high-level resignations or terminations sufficiently supported an inference of scienter because they occurred contemporaneously with erroneous and re-stated financial statements, as well as a revelation that SEC staff had recommended that the SEC file a civil injunctive action against one of the executives resigning, specifically the defendant company's CEO, who was also a named defendant in the lawsuit. *Id.* at 967 n.1, 975-76. Here, in contrast, Plaintiff has not alleged any financial restatements took place, let alone ones occurring at the same time as either of the noted resignations. And while Plaintiff did note the temporal proximity of the announcement of the SEC investigation and the Chief Accounting Officer's resignation, the link between the two events is far more tenuous than the link in *In re UTStarcom*. In addition, there are no allegations here that the Chief Accounting Officer is the subject of any civil injunctive action, nor are there any allegations that the SEC has individually targeted either Katzenberg or Coleman, the individually named Defendants.

### IV. Totality of Plaintiff's Allegations of Scienter

Although none of Plaintiff's allegations of scienter individually prove compelling enough to meet the PSLRA standard, "we must also consider the complaint in its entirety to determine whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter." *Zucco*, 552 F.3d

Case 2:14-cv-06053-SJO-E Document 56 Filed 04/01/15 Page 17 of 20 Page ID #:644

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority  _____
Send      _____
Enter     _____
Closed    _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.: **CV 14-06053 SJO (Ex)**                    DATE: **April 1, 2015**

at 1006 (quoting *Tellabs*, 551 U.S. at 323) (internal quotations omitted). "*Tellabs* permits a series of less precise allegations to be read together to meet the PSLRA requirement," and "[a]ccordingly, even vague or ambiguous allegations are now properly considered as a part of a holistic review when considering whether the complaint raises a strong inference of scienter." *Zucco*, 552 F.3d at 1006 (quoting *S. Ferry LP*, 542 F.3d at 784) (internal quotations omitted). "Even if a set of allegations may create an inference of scienter greater than the sum of its parts, it must still be at least as compelling as an alternative innocent explanation." *Id.*

Despite Plaintiff's numerous allegations of scienter, including those overlapping allegations of falsity, they are collectively not as compelling as a competing inference that DreamWorks articulated a series of reasoned factors that led the company to anticipate Turbo would be profitable. The fact that the film did not turn out to be profitable, no matter how quickly that may have been apparent, certainly does not evidence a specific intent to make fraudulent statements to investors. *See id.* at 1007. It is more plausible that Defendants made specific, sound, and perhaps optimistic projections for profitability, and later determined an impairment charge was necessary after the film failed to meet those projections in the variety of potential revenue-generating markets it initially referenced. (Mot. 12, 14.) As such, for the reasons stated above, Plaintiff failed to plead sufficiently particularized facts of several allegations that potentially could have contributed to a strong inference that Defendants knew or were deliberately reckless in misleading the investing public through material misrepresentations of Turbo's profitability.

      2. <u>Loss Causation</u>

Finally, Defendants move to dismiss the Complaint on the ground that Plaintiff has not sufficiently pleaded loss causation. (Mot. 9-12.)

Loss causation refers to the causal relationship between a material misrepresentation and the economic loss suffered by an investor. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). "To prove loss causation, [the Plaintiff] must demonstrate a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the [Plaintiff]." *Ambassador Hotel Co., Ltd. v. Wei–Chuan Inv.*, 189 F.3d 1017, 1027 (9th Cir. 1999).

"At the pleading stage, however, the plaintiff need only allege that the decline in the defendant's stock price was proximately caused by a revelation of fraudulent activity rather than by changing market conditions, changing investor expectations, or other unrelated factors." *Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014) (quoting *Metzler*, 540 F.3d at 1062). "In other words, the plaintiff must plausibly allege that the defendant's fraud was 'revealed to the market and caused the resulting losses.'" *Id.* (quoting *Metzler*, 540 F.3d at 1063).

Without loss causation, a claim of securities fraud does not exist. *Or. Pub. Emps. Ret. Fund*, 774 F.3d at 605. "Plaintiffs need not prove loss causation to survive a motion to dismiss, but they must

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: CV 14-06053 SJO (Ex)          DATE: April 1, 2015

properly allege it." *In re Montage Tech. Grp. Ltd. Sec. Litig.*, No. CV 14-00722 SI, 2015 WL 392669, at *8 (N.D. Cal. Jan. 29, 2015) (quoting *Metzler*, 540 F.3d at 1062).

Here, as discussed above, Plaintiff asserts it has properly alleged a material misstatement that led to inflated stock prices, specifically that Defendants failed to disclose information during the 2Q13 and 3Q13 earnings calls regarding Turbo's potential for profitability. (Compl. ¶¶ 11-12, 71.) Plaintiff then alleges that this fraudulent activity became known to the market on two occasions. Plaintiff alleges the first occurrence was on February 25, 2014, following DreamWorks' announcement that it was taking a $13.5 million impairment for Turbo in 4Q13. (Compl. ¶¶ 58, 71.) The second occurrence allegedly took place on July 29, 2014, when DreamWorks announced that the SEC was conducting an investigation related to the Turbo impairment charge and that the company did not expect Turbo to generate profit going forward. (Compl. ¶¶ 13-14, 63-66, 72.) Finally, Plaintiff alleges these revelations caused two separate drops in DreamWorks' stock price. (Compl. ¶¶ 61, 65, 71, 72.)

Defendants rely on *Loos* to support the proposition that neither revelation properly constituted a "corrective disclosure" necessary to establish loss causation. (Mot. 9-11; *Loos*, 762 F.3d at 887-890.) They argue that Plaintiff has not identified a corrective disclosure from Defendants revealing that Defendants knew the statements in question were fraudulent at the time they were made. (Mot. 9.) They also argue that *Loos* specifically rejected the two types of corrective disclosures Plaintiff identifies in its Complaint. (*Id.*)

With regards to DreamWorks' disappointing financial results, including the February 2014 impairment charge, Plaintiff argues these allegations are not merely indicative of poor financial health because the recorded $13.5 million charge caused a loss of $0.12 of earnings per share in 4Q13, the exact amount by which DreamWorks beat analyst consensus estimates in 3Q13. (Compl. ¶¶ 56-58; Opp'n 18.) Thus, they reason, the February 2014 revelation exposed not merely poor financial performance, but also the underlying fraud. (Opp'n 18.)

As an initial matter, the Court notes that "a securities fraud plaintiff is not required to allege an outright admission of fraud" by the defendants to survive a motion to dismiss. *Loos*, 762 F.3d at 888-89 (citing *Metzler*, 540 F.3d at 1064). Nonetheless, "[i]n the Ninth Circuit . . . a plaintiff properly pleads loss causation by alleging that the market learned of and reacted to the allegedly fraudulent practices and by alleging that this reaction caused the plaintiff's loss." *In re Montage*, 2015 WL 392669 at *9 (quoting *Perlmutter v. Intuitive Surgical, Inc.*, No. CV10-03451 LHK, 2011 WL 566814, at *5 (N.D.Cal. Feb. 15, 2011)) (internal quotations omitted). In *Loos*, the Ninth Circuit further explained that loss causation requires a plaintiff "to allege that the market learned of and reacted to the fraud, as opposed to merely reacting to reports of the defendant's poor financial health generally." *Loos*, 762 F.3d at 887-88 (internal quotations omitted).

MINUTES FORM 11                                                                                             :
CIVIL GEN                           Page 18 of 20                      Initials of Preparer

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.: CV 14-06053 SJO (Ex)              DATE: April 1, 2015

Plaintiff has failed to make such a distinction here.  The Court has already discussed reasons why Plaintiff's Complaint fails to adequately establish the fraudulent practices needed to sustain the claim of securities fraud here.  Again, Plaintiff points to the two revelations and then conclusorily alleges they establish that Defendants were aware of the true nature of their financial situation at the time of the disputed earnings calls, thus making those statements fraudulent.  (Opp'n 16-17.)

The Court has already explained that even if all of Plaintiff's allegations of fraudulent misstatements are taken as true, the Complaint fails to provide enough facts that show Defendants knew of the fraudulent nature of the earnings calls statements, or acted with deliberate recklessness when making those statements.  Given the heightened pleading standards of the PSLRA, the Court hesitates to attribute the drop in DreamWorks' stock price to a revelation of fraudulent activity, as opposed to what seems more likely to be "changing market conditions, changing investor expectations, or other unrelated factors."  *Loos*, 762 F.3d at 887.

Thus, the Court finds that this case falls closer to *Loos* than to authority cited by Plaintiff.  *Compare Loos*, 762 F.3d at 884-88 (holding that disappointing earnings statements "are merely indicative of poor financial health; they do not tend to suggest that the company had engaged in fraudulent accounting practices," but rather "simply reveal that [the company] failed to meet its revenue goals"), *with Smilovits*, 2012 WL 6574410 at *7 (rejecting the defendants' contention that a stock decline was due merely to "bad news," but was instead the direct result of revelations of information the defendants had concealed for years, in part because the plaintiff provided sufficiently particularized factual allegations of fraud, including reports from confidential witnesses and insider stock sales from the defendants).

Regarding the announcement of the SEC investigation, the Court notes that the "announcement of an investigation, standing alone and without any subsequent disclosure of actual wrongdoing, does not reveal to the market the pertinent truth of anything, and therefore does not qualify as a corrective disclosure."  *Loos*, 762 F.3d at 890 n.3 (internal citation and quotations omitted).  The Court disagrees with Plaintiff's contention that DreamWorks' July 2014 announcement that Turbo had "a higher rate of amortization due to its lower projected Ultimate Revenues," (Compl. ¶ 64), qualifies as a "subsequent of disclosure of actual wrongdoing" under *Loos*.  *Loos*, 762 F.3d at 890 n.3 (internal citation and quotations omitted).  "Indeed, at the moment an investigation is announced, the market cannot possibly know what the investigation will ultimately reveal," thus only putting investors "on notice of a *potential* future disclosure of fraudulent conduct."  *Loos*, 762 F.3d at 890 (emphasis in original).  As such, the Court finds Plaintiff's allegations of corrective disclosures fail to establish loss causation.

III.   RULING

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.: <u>CV 14-06053 SJO (Ex)</u>          DATE: <u>April 1, 2015</u>

For the above reasons, the Court **GRANTS** Defendants' Motion; the Complaint is **DISMISSED** with leave to amend.  Plaintiff has fifteen days from the date of this Order to file a First Amended Complaint.  Defendants have fifteen days thereafter to respond.

IT IS SO ORDERED.